[Cite as *State v. Shreve*, 2017-Ohio-8390.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JACK SHREVE | : | Case No. 2017CA00014 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 2016CR1488



JUDGMENT:                        Affirmed



DATE OF JUDGMENT:                October 30, 2017



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           DONOVAN HILL
Prosecuting Attorney                      116 Cleveland Avenue North
By: KATHLEEN O. TATARSKY                  Canton, OH  44702
Assistant Prosecuting Attorney
110 Central Plaza South
Suite 510
Canton, OH  44702-1413

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant, Jack Shreve, appeals his December 28, 2016 conviction in the Court of Common Pleas of Stark County, Ohio. Plaintiff-Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 16, 2016, the Stark County Grand Jury indicted appellant on two counts of rape in violation of R.C. 2907.02 and one count of gross sexual imposition in violation of R.C. 2907.05. Said charges arose from incidents involving the daughter of his live-in girlfriend. The daughter, K.H., was under ten years old at the time.

{¶ 3} A jury trial commenced on December 12, 2016. The jury found appellant guilty of one of the rape counts and the gross sexual imposition count, and not guilty of the other rape count. By judgment entry filed December 28, 2016, the trial court sentenced appellant to an aggregate term of life imprisonment with parole eligibility after serving fifteen years.

{¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶ 5} "THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I

{¶ 6} In his sole assignment of error, appellant claims his convictions were against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 7}   On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 8}   Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b) which states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 9} "Sexual conduct" is defined in R.C. 2907.01(A) as:

[V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 10} Appellant was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4) which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 11} "Sexual contact" is defined in R.C. 2907.01(B) as: "[A]ny touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 12} For the rape count appellant was convicted of, the August 16, 2016 indictment alleged appellant, between February 1, and 22, 2016, engaged in sexual conduct by "the insertion however slight of any part of the body or any instrument, apparatus or other object into the vaginal or anal opening" of K.H. who was under the age of ten.

{¶ 13} In his appellate brief, appellant challenges the credibility of the witnesses and the contradictory testimony presented.

{¶ 14} At the time of trial, K.H. was nine years old. T. at 204. K.H. testified when she was eight years old, she lived with her mom, her siblings, and appellant, her mother's boyfriend. T. at 205-206. In February 2016, K.H. had her tonsils removed and stayed home from school. T. at 206-207. At times she was left alone with appellant. T. at 207. Appellant lured K.H. to an upstairs bedroom where he told her to watch a "nasty movie," take off her clothes, put on her mother's clothes and black high heels, and get on the bed whereupon he tied her to the bed and told her to be quiet. T. at 208-209. K.H. testified appellant touched her "pee pee" with his finger and put a "dodo" in his mouth. T. at 211. The dodo looked like a "wiener" and made buzzing sounds. *Id.* The color of the dodo was blue, and there was also a white one. T. at 211-212. K.H. stated appellant never touched her with the dodos. T. at 212. K.H. testified it only happened two times, but in describing the second incident, stated appellant did not touch her. T.

at 212-213. K.H. admitted to telling people in the past that her biological father had done something to her, but explained, "[m]y mom told me to lie about it." T. at 216. On cross-examination, K.H. reiterated that appellant never touched her with the dodos, and never touched her during the second incident. T. at 219-220.

{¶ 15} Suzanne Cutler conducted a forensic interview with K.H. after K.H. disclosed the incidents to her school counselor. T. at 223, 237. Based upon the results of the interview, Stark Count Jobs and Family Services contacted law enforcement. T. at 227-228.

{¶ 16} Canton Police Detective Terry Monter executed a search warrant of the home. T. at 243. In the upstairs master bedroom, he found pornographic videos, a blue dildo, and black high heels. T. at 247-248; State's Exhibits 1-C, 1-D, 1-E, 2, 4, and 5. A white dildo was discovered in a dresser drawer. T. at 250; State's Exhibits 1-F and 3.

{¶ 17} Canton Police Detective Joseph Mongold investigated the allegations. He received information that K.H. had disclosed the following (T. at 277-278):

> Specifically that on an incident where she was home from school and she was left home alone with Mr. Shreve, that he did touch her, and I'll use her words, "her pee pee," with both his finger, by inserting his finger into her pee pee with his pee pee on her pee pee and on her butt and did use sexual devices, and she was very specific on those sexual devices that were used; a white, I believe that she referred to it as a dodo on her, and she described that as a device that vibrated, and she stated that he used a blue dodo on himself during the incident.

{¶ 18} Detective Mongold stated appellant consented to an interview and voluntarily gave a DNA sample. T. at 281, 283. Appellant denied the allegations, but admitted to watching pornography and "liked to have the individual that he was having sex with wear high heels during sex." T. at 283, 298.

{¶ 19} Appellant's DNA was found on the non-handle of the blue dildo. T. at 286, 330-331; State's Exhibit 6-C. K.H.'s DNA was found on the handle and non-handle of the white dildo. T. at 287, 332-333; State's Exhibit 6-C.

{¶ 20} Megan Dahlheimer, a pediatric nurse practitioner at Akron Children's Hospital, physically examined K.H. T. at 345, 347. She testified K.H. told her appellant put his pee pee "into her pee pee as well as into her butt." T. at 356. K.H. also told her about the dildos and the nasty pictures. *Id.* The physical examination did not reveal anything abnormal which Ms. Dahlheimer explained was not abnormal because "up to 96 percent, 97 percent of patients seen have a completely normal exam." T. at 359-360. Ms. Dahlheimer completed a written assessment and diagnosed child sexual abuse. T. at 361-362, 371; State's Exhibit 7. In making her diagnosis, Ms. Dahlheimer noted the following (T. at 364-365):

"A forensic interview was completed with the patient while she was in school. During her interview with Ms. Cutler, she disclosed vaginal-penile and anal-penile penetration by Jack as well as oral-vaginal penetration. Additionally, [K.] states she was made to watch pornography.

"During [K.]'s medical examination today, she has disclosed vaginal-penile, anal-penile, and oral-vaginal penetration as well to this NP. She states this has happened more than one time. [K.] also speaks about being made to watch pornography while in Jack's room.

{¶ 21} Carrie Schnirring, a psychology assistant at Northeast Ohio Behavioral Health, met with K.H. four times and diagnosed her with posttraumatic stress disorder. T. at 390, 401, 422; State's Exhibit 8. K.H. would at times speak in "baby talk" and then get angry and blurt out angry statements in discussing what appellant did to her, indicating the topic was stressful for her. T. at 406. K.H. told Ms. Schnirring that appellant took her to the bedroom and would make her watch a "nasty show, and then she explained that he would then copy the things that he saw on the nasty show with her." T. at 412. Appellant "would have her wear nasty clothes" and then "take those clothes off of her." *Id.* Appellant would put his private part "in her butt and also in her vagina." T. at 413. K.H. also told Ms. Schnirring about the blue and white dildos and explained that appellant would put one inside her pee pee. *Id.* "[A]fter he did that, when she went to the bathroom afterwards and she wiped, there was blood on the toilet paper." *Id.* This indicated to Ms. Schnirring that "this was something more than just her finding someone's sex toys in a bedroom. This was something that she actually experienced because it caused her to bleed later." T. at 414-415.

{¶ 22} Prior to meeting with K.H. over the incidents involving appellant, Ms. Schnirring had evaluated K.H. in 2015 over sexual allegations she had made against her biological father. T. at 425-426. At that time, K.H.'s disclosures to Ms. Schnirring

were very inconsistent compared to the information she had provided during the forensic interview. T. at 427. The story changed, the names changed, and K.H. contradicted herself. *Id.* K.H.'s details were "fantastical in nature," seemed "implausible," and were "farfetched." T. at 428. The allegations were not able to be verified and were deemed inconclusive. *Id.* K.H. later explained her mother had advised her to lie about her biological father. T. at 420. In comparison, K.H.'s descriptions of the incidents with appellant were consistent and contained idiosyncratic details i.e., "very unique aspects of the experience." T. at 405, 414, 421, 426-427.

{¶ 23} In defense, appellant called Meredith Skortschir, a psychiatric nurse consultant with Child & Adolescent Behavioral Health. T. at 453. Ms. Skortschir saw K.H. in later 2015 through the beginning of 2016 to help her with her medications for ADHD and "an adjustment disorder with anxiety and depression." T. at 405, 453, 455. Ms. Skortschir found K.H. to be both a truthful person and one that would tell lies. T. at 459.

{¶ 24} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 25} The jury heard testimony from nine year old K.H. recounting that appellant had touched her pee pee with his finger. Although she testified appellant had not touched her with the dildos, her DNA was found on the white one. K.H. disclosed to others that appellant had touched her pee pee with the white dildo. While there were

some inconsistencies between her trial testimony and what she had reported to others, her disclosures to others were fairly consistent. She consistently described the pornographic movies, the high heels, the two dildos, and appellant touching her pee pee with his finger and the white dildo.

{¶ 26} Given K.H.'s testimony, corroborated by Ms. Dahlheimer's diagnosis of child sexual abuse, Ms. Schnirring's diagnosis of posttraumatic stress disorder, and the forensic evidence of K.H.'s DNA on the white dildo, we find sufficient credible evidence of appellant engaging in sexual conduct/contact with K.H.

{¶ 27} Upon review, we find sufficient evidence, if believed, to support the convictions, and do not find any manifest miscarriage of justice.

{¶ 28} The sole assignment of error is denied.

{¶ 29} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Hoffman, J. concur.

EEW/sg 106